ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TPG GLOBAL, LLC, a limited liability company, <br><br> Plaintiff, <br> v. <br><br> ADAM LEVINE, an individual. <br><br> Defendant. | Civil Action No.4:15-CV-00059-A |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, TPG Global, LLC the Plaintiff in the above styled cause, and makes and files this First Amended Complaint and would respectfully show the Court as follows:

### INTRODUCTION

1.   This action arises out of the blatant misuse and unlawful retention of confidential and proprietary information belonging to TPG Global, LLC (together with its affiliates and predecessors, "TPG" or the "Firm") by Adam Levine, a former TPG employee, who, in connection with efforts to extort millions of dollars from TPG, has made repeated threats to disclose and disseminate that information in a manner intended to inflict substantial, immediate, and irreparable harm on TPG and certain of its employees.

2. Levine was hired as a member of TPG's public affairs group in January 2008. In that role Levine had access to the Firm's most sensitive confidential and proprietary information and was required to enter into confidentiality agreements prohibiting the disclosure of such sensitive internal information.

3. Levine has breached those agreements and has threatened to engage in further breaches that will irreparably harm the Firm. After Levine was informed that he would not be elevated to a partnership position at TPG, and that TPG was considering various alternatives for the position of head of TPG's public affairs group, he made a series of ominous threats against the Firm and its employees and began secretly accessing from the Firm proprietary and confidential information, which, on information and belief, he has begun to illegally disclose to third parties, consistent with his threats to do the same. On information and belief, in at least one instance, a document was disclosed to third parties which was fraudulent, in that it had been altered.

4. Absent the intervention of this Court, such threatened disclosures are certain to continue. Despite multiple written requests, Levine has refused to return the unlawfully retained material, even though he is obligated by contract and applicable law to do so, in an effort to extort millions of dollars from TPG. Moreover, on information and belief, Levine has disseminated such internal confidential information to third parties, including the media.

5. Accordingly, TPG is entitled to a temporary restraining order, preliminary injunction and/or permanent injunction: (1) requiring Levine to return all TPG property, whether original, duplicated, computerized, handwritten, or any other form whatsoever,

including confidential and proprietary information, and his Firm-owned electronic devices, as well as all TPG confidential and proprietary information existing on his personal devices and/or storage media; (2) enjoining Levine from using, disclosing, or exploiting TPG's confidential and proprietary information; (3) ordering Levine to preserve, and not to delete, destroy, conceal or otherwise alter, any paper or electronic files or other data of TPG; and (4) ordering Levine to identify anyone who is not currently employed by TPG to whom he has disclosed TPG's confidential and proprietary information. In addition, TPG is entitled to recover the damages it has suffered, and will continue to suffer, as a result of Levine's misconduct.

## PARTIES

6. Plaintiff TPG Global, LLC, is a leading global private investment firm, which is incorporated in Deleware and headquartered in Fort Worth, Texas, at 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

7. On information and belief, defendant Adam Levine is a citizen of the State of California and resides at Millennium Tower, 301 Mission Street, Apt. 3F, San Francisco, California 94105.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1). The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

9. Venue is proper in the Northern District of Texas (Fort Worth Division) because a substantial part of the property that is the subject of this action was situated on

computer servers located in Fort Worth, Texas. Additionally, TPG is headquartered in Fort Worth and suffered the damages it complains of in Fort Worth. A Texas jury has an interest in remedying this injury to a Texas resident.

## FACTUAL BACKGROUND

### Levine Joins TPG

10. In or about January 2008, TPG hired Levine as a member of the Firm's public affairs team. Levine was responsible for, among other things, helping to coordinate TPG's responses to public relations inquiries and issues. In that role, Levine occupied a position of trust and confidence that afforded him access to sensitive non-public, confidential, and proprietary information about TPG and its business and operations, including its strategic planning.

### Levine's Confidentiality Obligations to TPG

11. As part of his employment at TPG, Levine entered into several agreements that were intended to protect the confidential financial and business information of TPG and its investors.

12. On January 2, 2008, Levine entered into a Confidentiality Agreement (the "Confidentiality Agreement") pursuant to which he agreed not to disclose certain "Confidential Information," defined as:

> [N]onpublic and proprietary information concerning the business and operations of TPG; it affiliates, related persons and entities; the investment funds managed by TPG; the investors in such investment funds; the portfolio companies of such investment funds; and certain information provided to TPG by third-parties.

13. Levine explicitly and unambiguously agreed to "hold Confidential Information in strict confidence and [not] disclose to any person or entity any Confidential Information in any matter whatsoever" and upon the written request of TPG, to "promptly return to TPG all documents, notes and other tangible materials representing the Confidential Information and all electronic and hard copies thereof."

14. In addition, Levine agreed that any breach of the Confidentiality Agreement would result in irreparable harm to TPG and that TPG therefore was entitled to obtain injunctive and other equitable relief in order to protect its confidential information.

15. Levine also agreed to maintain the confidentiality of electronic devices that he was provided by TPG, and to return those devices to TPG upon request. Supplementing the provisions of the Confidentiality Agreement, Levine also executed an Employment Use Agreement, dated February 6, 2014 (the "Mobile Device Agreement"), which restricted Levine's use of those devices and required them to be returned to TPG upon request.

16. Levine also agreed be bound by TPG's Acceptable Use Policy, which restricted Levine's use of Firm information resources and systems for TPG business purposes and barred him from using TPG systems to view information or download information that he was not authorized to access.

17. Levine was further bound by various confidentiality obligations set forth in the policies and procedures contained in the Firm's Employee Handbook.

### Levine Repeatedly Threatens TPG and Its Employees

18.  After more than five years of working at TPG, Levine was informed in 2014 that he would not be promoted to partnership and that TPG was considering various alternatives for the position of head of TPG's public affairs group. Levine reacted to these developments by making an escalating series of threats against TPG and its personnel, including that he would disclose sensitive and proprietary information to the media and that he would seek to plant damaging stories that would cause substantial harm to TPG and its business.

19.  For example, in November 2014, in a conversation with a TPG partner, Levine threatened that he could and would destroy TPG within a matter of days by planting a few key stories with the national press. During their conversation Levine also was highly critical of another TPG partner and threatened to do everything he could to "take down" that partner, as well as TPG. In fact, Levine commented that he would "take down" TPG the same way that he took down Scooter Libby. This was a reference to the fact that Levine, who had worked as a deputy press secretary in the George W. Bush administration, contended that he was the one responsible, through his grand jury testimony, for sending I. Lewis "Scooter" Libby to prison in connection with the federal investigation of the leak of the covert identity of Central Intelligence Agency officer Valerie Plame Wilson.

20.  In November 2014, Levine sent an inappropriate and threatening e-mail to the partner responding to his suggestion that Levine may want to think about looking for employment elsewhere, stating, in part:

> I am not a vengeful or a spiteful man. But if you and your partners continue to handle this matter as you have thus far, this could very quickly deteriorate into a live fire exercise in the importance of handling public affairs issues with care and caution.

21. Also in November 2014, Levine also reached out to another senior partner at TPG to discuss how upset he was with TPG. During this conversation Levine referred to himself as a "weapon of mass destruction" for TPG and said that "he could bring TPG down in ten days."

22. Based on these threats and others, numerous TPG employees are concerned for their personal safety, which has necessitated TPG's hiring of additional security personnel and services.

**Levine's Taking of TPG's Confidential Information**

23. Levine has begun to carry these threats out by surreptitiously removing confidential information from TPG's offices and, on information and belief, disclosing it to third parties as part of an effort to damage TPG and its business. During this time period, Levine was taking from TPG's offices and systems confidential TPG documents and communications. These materials had no connection to any of Levine's then-current work, and were taken for the sole purpose of Levine carrying out his threats to "take down" the Firm by improperly releasing sensitive internal information.

24. In furtherance of that scheme, Levine visited TPG's San Francisco office at odd, non-work hours, including Christmas Eve and Christmas Day, for the sole purpose of secretly accessing TPG documents and materials, which contained confidential and commercially sensitive information.

25. TPG's records indicate that during these times that Levine was in the office, he was also logging onto TPG's computer system and improperly downloading to his laptop numerous electronic files containing TPG's confidential and proprietary information.

**Levine's Disclosure of TPG's Confidential Information**

26. Having misappropriated TPG's confidential materials, Levine, on information and belief, has begun to follow through on his threats to damage TPG and its personnel by disseminating certain information and documents, including doctored e-mails, to media outlets and other third parties.

27. TPG learned of one such instance when, on December 30, 2014, TPG was contacted by a reporter for the New York Times. The New York Times reporter told TPG that he had received internal TPG e-mails from an unnamed source, and subsequently provided TPG with one such TPG e-mail from November 2013 that contained TPG confidential information.

28. TPG conducted a forensic investigation into this e-mail and determined that it had been altered, with certain information having been added, and other information having been deleted, and other information having been changed. TPG also determined that only a limited number of TPG personnel had access to the original e-mail that had been doctored, including Levine. In fact, records show that on December 20, 2014, Levine forwarded to his own e-mail address a copy of the unaltered version of the November 2013 e-mail.

29. Based on the results of its investigation, TPG believes that Levine altered the November 2013 e-mail, and in violation of his confidentiality obligations to TPG, provided the document to the New York Times.

30. Additionally, TPG has reason to believe that Levine has been in contact with other media outlets and has provided TPG's confidential information to these publications as well.

### Levine's Termination from TPG

31. On December 31, 2014, in response to Levine's continued threats and taking of TPG's confidential information, TPG sent a letter notifying Levine that his employment with TPG had been terminated, effective immediately, as a result of his flagrant breaches of the terms of his employment, including his confidentiality obligations, among other things.

32. TPG also demanded that Levine cease and desist from threatening TPG and its employees, and from disseminating Firm information to third parties in violation of his agreements. TPG also demanded that Levine promptly return all TPG materials, including any of TPG's confidential or proprietary information in his custody and control as well as his TPG-owned laptop, phone, and any other electronic devices.

33. Levine has not returned any materials to TPG, and as of the filing of this complaint, Levine remains in possession of materials that he took from TPG's offices as well as his Firm-owned laptop computer and Blackberry device. Levine is attempting to extort TPG, through conditioning the return of TPG's materials and electronic devices on the Firm's payment to him of millions of dollars.

34. Absent intervention from this Court, TPG believes that Levine will continue to disclose TPG's confidential and proprietary information to third parties in an effort to inflict substantial harm to TPG and its business, including harm to its reputation, investor confidence, and goodwill.

## CLAIM 1: BREACHES OF CONTRACT

35. TPG repeats and realleges the allegations of paragraphs 1 through 34 as if set forth fully herein.

36. On January 1, 2008, TPG and Levine entered into the Confidentiality Agreement.

37. On February 6, 2014, TPG and Levine entered into the Mobile Device Agreement.

38. The Confidentiality Agreement and Mobile Device Agreement are valid, binding and enforceable contracts between TPG and Levine.

39. TPG has performed, and continues to perform, all conditions, duties, obligations and promises required on its part to be performed in accordance with the terms and conditions of the Confidentiality Agreement and Mobile Device Agreement.

40. The Confidentiality Agreement binds Levine to hold all of TPG's confidential information in strict confidence and not to disclose that information to any person or entity in any matter whatsoever, and requires Levine to promptly return to TPG all documents, notes, and other tangible materials representing the confidential information and all electronic and hard copies thereof, upon the written request of TPG.

41. The Mobile Device Agreement, requires Levine to deliver to TPG his mobile devices, including, but not limited to, his Firm-owned laptop computer and Blackberry device, immediately upon request from TPG.

42. Levine breached his obligations under the Confidentiality Agreement by improperly taking confidential TPG documents and communications from TPG, by failing to return TPG's confidential and proprietary information upon request, and, on information and belief, by disclosing confidential information to third parties, including the New York Times.

43. Levine breached his obligation under the Mobile Device Agreement by failing to return his mobile devices to TPG immediately upon request.

44. As a direct and proximate result of Levine's breaches of the Confidentiality Agreement and Mobile Device Agreement, TPG has suffered substantial harm, of an amount that will be determined at trial.

## CLAIM 2: INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE

45. TPG repeats and realleges the allegations in paragraphs 1 through 34, as if fully set forth herein.

46. As set forth in the First Cause of Action supra, Levine has breached his obligations under the Confidentiality Agreement and the Mobile Device Agreement by retaining TPG's confidential information and mobile devices in his possession after being terminated by TPG and, on information and belief, by disclosing TPG's confidential information to third parties. There is a strong likelihood that TPG will succeed on its claims for breach of contract.

47.  Levine's breaches of contract have caused, and continue to cause, TPG injury including, without limitation, irreparable harm for which there is no adequate remedy at law. In Section 6 of the Confidentiality Agreement, the parties expressly agreed that breaches of that agreement would result in irreparable damage justifying the granting of injunctive relief.

48.  There is no adequate remedy at law to compensate TPG for the irreparable harm to its reputation, investor confidence, and goodwill it has suffered and will continue to suffer due to Levine's disclosure of confidential information.

49.  These harms to TPG would be resolved if the Court were to issue injunctive relief and order Levine to specifically perform his obligations under the Confidentiality Agreement and Mobile Devices Agreement to return all confidential information and mobile devices in his possession.

50.  The balance of equities strongly favors issuing injunctive relief in favor of TPG as Levine will suffer no hardship from being ordered to comply with his existing contractual obligations by returning TPG's property.

### CLAIM 3: CONVERSION

51.  TPG repeats and realleges the allegations in paragraphs 1 through 34, as if fully set forth herein.

52.  Levine currently possesses TPG documents and communications, which contain confidential and commercially sensitive information, and a Firm-owned laptop computer and Blackberry device.

53. On December 31, 2014, TPG sent a letter to Levine notifying him that his employment with TPG had been terminated, and requesting that Levine return all TPG property, including all documents and materials containing confidential information, to TPG by January 5, 2015. TPG also requested that Levine return all of his electronic devices to TPG, including his Firm-owned laptop computer and Blackberry device by January 5 as well.

54. Notwithstanding TPG's request, Levine has failed to return any such materials to TPG, and still possesses TPG's confidential information and mobile devices.

55. Levine's actions were intentional, malicious, oppressive, or fraudulent, and give rise to liability for exemplary damages according to proof at trial.

56. As remedies for Levine's conversion, TPG seeks compensatory and exemplary damages, a constructive trust over the converted materials, and an injunction requiring Levine to return the converted materials to TPG.

## CLAIM 4: BREACH OF FIDUCIARY DUTY

57. TPG repeats and realleges the allegations in paragraphs 1 through 34, as if fully set forth herein.

58. Given the relationship between TPG and Levine, a confidential relationship existed between TPG and Levine under Texas law. This relationship expressly imposed upon Levine a duty to maintain the confidence and secrecy of TPG's confidential and proprietary information and especially a duty not to disclose such information to third parties.

59. As a result, Levine owed TPG fiduciary duties, including duties of loyalty, honesty, and utmost good faith and the duty not to engage in self-dealing.

60. Levine has breached his fiduciary duties to TPG by copying or otherwise removing information about TPG from TPG's premises and computer servers and by using and intending to use such information to the detriment of TPG.

61. Therefore, TPG is entitled to a temporary restraining order and a preliminary injunction enjoining Levine from any further breaches of fiduciary duties, from any further use or disclosure of TPG's confidential and proprietary information.

### CLAIM 5: MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION AND VIOLATION OF THE TEXAS THEFT LIABILITY ACT

62. TPG repeats and realleges the allegations in paragraphs 1 through 34, as if fully set forth herein.

63. TPG's confidential and proprietary information, whether recorded on paper or as data in a computer, constitute trade secrets and confidential information under Texas common law. Levine obtained TPG's trade secrets and confidential information by improper means, including theft and a breach or inducement of a breach of a confidential relationship, contractual duty, or other duty to maintain the secrecy or limit the use of the trade secret and confidential information.

64. Levine misappropriated TPG's trade secrets and confidential information because he acquired such trade secrets and confidential information knowing or having reason to know that the trade secrets and confidential information were acquired by

improper means and because he improperly disclosed or used TPG's trade secrets and confidential information.

65. Levine's misappropriation of TPG's trade secrets and confidential information was and is willful and malicious because he intentionally tried to benefit himself knowing that in so doing he was injuring TPG. Levine's conduct constitutes a violation of the Texas Theft Liability Act, Chapter 134 of the Texas Civil Practice and Remedies Code.

66. If not immediately enjoined by way of a temporary restraining order, and the entry of a temporary injunction, Levine will continue to use, disclose, and misappropriate TPG's trade secrets and confidential information. Despite the fact that he is aware of TPG's intent to seek judicial relief, Levine intends to continue using TPG's trade secrets and confidential information.

67. Unless immediately enjoined by this Court by way of a temporary restraining order and the entry of a preliminary injunction, Levine's misappropriation of TPG's trade secrets and confidential information will continue to injure TPG, and there is no adequate remedy at law for such irreparable injury.

## **JURY DEMAND**

TPG demands a trial by jury.

## **PRAYER FOR RELIEF**

TPG prays that Levine be cited to appear and answer herein and that TPG has and recover judgment from Levine as follows:

a. For a temporary restraining order, preliminary injunction and/or permanent injunction requiring Levine to return all TPG property, whether original, duplicated, computerized, handwritten, or any other form whatsoever, including confidential and proprietary information, and his Firm-owned electronic devices, as well as all TPG confidential and proprietary information existing on his personal devices and/or storage media;

b. For a temporary restraining order, preliminary injunction and/or permanent injunction permanently enjoining Levine from possessing, disclosing, using, or exploiting TPG's confidential and proprietary information;

c. For a temporary restraining order, preliminary injunction and/or permanent injunction requiring Levine to preserve, and not to delete, destroy, conceal or otherwise alter, any paper or electronic files or other data of TPG;

d. For a temporary restraining order, preliminary injunction and/or permanent injunction requiring Levine to identify anyone who is not currently employed by TPG to whom he has disclosed TPG's confidential and proprietary information;

e. Compensatory damages in an amount to be determined at trial, constituting its losses from Levine's misconduct;

f. Reasonable and necessary attorneys' fees;

g. Pre- and post-judgment interest at the maximum rate allowed by law;

h. All costs of suit; and

i. All such other and further relief, both general and special, at law or in equity, to which TPG may show itself justly to be entitled or as this Court may deem appropriate.

Dated: January 28, 2015

                         Respectfully submitted,

*/s/ Marshall Searcy*

Constantine Z. Pamphilis
State Bar No. 00794419
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, TX 77002
Telephone: (713) 220-8800
Facsimile: (713) 222-0843
dpamphilis@kasowitz.com
ATTORNEY-IN-CHARGE
FOR PLAINTIFF TPG GLOBAL, LLC

Marc E. Kasowitz
*Pro Hac Vice* Application to be Submitted
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
mkasowitz@kasowitz.com

Marshall M. Searcy, Jr.
State Bar No. 17955500
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3512
Fax: (817) 878-9280
marshall.searcy@kellyhart.com