

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2015 FEB -3  PM 4:15

*MMC*

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TPG GLOBAL, LLC, a limited liability company, | |
| Plaintiff, | Civil Action No.4:15-CV-00059-A |
| v. | |
| ADAM LEVINE, an individual. | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

I. PRELIMINARY STATEMENT ........................................................................................1

II. FACTUAL BACKGROUND ...........................................................................................3

      A.      The Origins of Levine's Dispute With TPG .............................................................3

            1.      Levine is Not Made a Partner and is Later Told Someone Else
                   Might Lead an Expanded Public Relations Group at TPG ........................3

      B.      In December 2014 Levine Began Removing Materials From TPG's Office
            and Downloading Files From TPG's Texas Server .................................................5

      C.      Levine Signed Agreements That Require Him to Maintain the
            Confidentiality of TPG Information and That Require Him to Return TPG
            Equipment and Documents to TPG .........................................................................6

III. ARGUMENT ..................................................................................................................9

      A.      Factors for Establishing a Right to Preliminary Injunction ....................................9

      B.      TPG is Entitled to Injunctive Relief .....................................................................10

            1.      TPG Has a Substantial Likelihood of Success on the Merits ...................10

            2.      TPG is Threatened With Immediate and Irreparable Harm ......................13

            3.      The Threat of Injury to TPG is Outweighed by Any Supposed
                   Damage to Levine ....................................................................................16

            4.      Preserving the Sanctity of Contracts and the Protection of Trade
                   Secrets Serves the Public's Interest .........................................................17

            5.      Levine's Belated and False Whistleblower Claim Does Not
                   Change TPG's Right to Injunctive Relief .................................................18

IV. CONCLUSION ..............................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Derringer Corp. v. Bond,*
   924 S.W.2d 773 (Tex. App. – Waco 1996, no writ)....................................................10, 11, 16

*American Express Fin. Advisors, Inc. v. Scott,*
   955 F. Supp. 688 (N.D. Tex. 1996) ...........................................................................9

*Bianco v. Globus Medical, Inc.,*
   No. 2:12-cv-147-JRG, 2012 U.S. Dist. LEXIS (E.D. Tex. Nov. 14, 2012) .............................9

*Cambridge Strategies, LLC v. Cook,*
   No. 3:10-CV-2167-L, 2010 U.S. Dist. LEXIS 133702 (N.D. Tex. Dec. 17, 2010) ................13

*FMC Corp. v. Varco Int'l, Inc.,*
   677 F.2d 500 (5th Cir. 1982) ..........................................................................11, 14, 15

*Jonibach Mgmt. Trust v. Wartburg Enters.,*
   750 F.3d 486 (5th Cir. 2014) .............................................................................9

*Lakedreams v. Taylor,*
   932 F.2d 1103 (5th Cir. 1991) ..........................................................................9, 14

*Learn2.com, Inc. v. Bell,*
   No. 3:00-CV-812-R, U.S. Dist. LEXIS 14283 (N.D. Tex. July 20, 2000).............................17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham,*
   658 F.2d 1098 (5th Cir. 1981) .............................................................................14

*Molex, Inc. v. Nolen,*
   759 F.2d 474 (5th Cir. 1985) ..............................................................................14

*Picker Int'l, Inc. v. Blanton,*
   756 F. Supp. 971 (N.D. Tex. 1990) ........................................................................10, 13, 17

*Union Carbide Corp. v. UGI Corp.,*
   731 F.2d 1186 (5th Cir. 1984) ..........................................................................9, 15, 17

*Williams v. Compressor Eng'g Corp.,*
   704 S.W.2d 469 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ....................10, 13

*Zoecon Indus. v. American Stockman Tag Co.,*
   713 F.2d 1174 (5th Cir. 1983) ...........................................................................16

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff TPG Global, LLC ("TPG") submits this Memorandum of Law in Support of its Motion for Preliminary Injunction against defendant Adam Levine ("Levine") and would respectfully show the Court as follows:

### I.
### PRELIMINARY STATEMENT

TPG seeks immediate judicial intervention to require Levine, a former TPG employee, to comply with his contractual obligations, which he has flouted to date, to return confidential and proprietary information which he stole from TPG and to prevent him from publicly disclosing TPG's internal confidential and proprietary information as he has repeatedly threatened to do, and has done, in his attempt to extort millions of dollars from TPG.

Levine is contractually required to hold TPG's confidential information in "strict confidence," not to publicly disclose such information and to return all such information to TPG on demand. Undeterred by his contractual obligations, Levine stole TPG's internal confidential and proprietary information, ignored TPG's demands that he return it and has made a series of escalating threats to "take down" TPG through the unlawful disclosure of its confidential information unless his extortion demands were met. Levine has also at least twice disclosed, or caused to be disclosed, such information to third parties. This clear breach of his nondisclosure agreement – along with Levine's conversion of TPG's property and misappropriation of trade secret information – demonstrates a substantial likelihood that TPG will succeed on the merits of its claim and will suffer immediate and irreparable harm unmatched by any supposed damage to Levine that an injunction might cause.

After his extortion demands were not met, Levine claimed for the first time that he is a whistleblower. But Levine's whistleblower claim is nothing more than a false pretext, designed

to deflect attention from his theft of internal TPG information and his extortionist threats.  The chronology of events is clear and indisputable that Levine did not seek to present himself as a whistleblower until *after* his extortionist demands for millions of dollars was rightfully rejected by TPG.  That chronology is set forth in the Declaration of Clive Bode filed in support of this motion.

In fact, Levine's claim is an insult to whistleblowers.  Whistleblowers do not, as Levine did, hold their employers' confidential and proprietary information hostage and demand millions of dollars to which they have no legal right as a condition of compliance with their contractual obligation to return confidential information.   Levine's whistleblower claim is a false makeweight and does not change TPG's entitlement to relief; Levine is obligated to return and to not disclose or use TPG's confidential and proprietary information.

For these reasons, and because the public has a vested interest in preventing the disclosure of confidential and proprietary information and requiring persons to adhere to contractual obligations, TPG is entitled to a preliminary injunction against Levine that would immediately: (i) require Levine to return equipment that TPG issued to Levine as part of his employment, including a laptop and Blackberry; (ii) require Levine to return TPG's confidential documents, including all copies of those documents; and (iii) bar Levine from disclosing or causing to be disclosed, by any means, TPG's confidential information to third parties until this Court determines whether that disclosure is prohibited by contract and/or applicable law.

## II.
## FACTUAL BACKGROUND

TPG is a leading global private investment firm headquartered in Fort Worth, Texas. TPG hired Levine as a member of the TPG's public affairs team in early 2008.[1] Levine's responsibilities included responding to public relations inquiries and issues. In that role, Levine occupied a position of trust and confidence that afforded him access to sensitive non-public, internal, confidential, and proprietary information about TPG and its business and operations, including its strategic planning.[2]

### A.    The Origins of Levine's Dispute With TPG

#### 1.    Levine is Not Made a Partner and is Later Told Someone Else Might Lead an Expanded Public Relations Group at TPG

Levine's dispute with TPG began when he was not promoted to partner in June 2014.[3] In the weeks that followed, Levine initiated a series of rambling, unsettling conversations with TPG officers and partners. In the months following Levine's initial ramblings over not making partner, TPG began vetting proposals to expand their public affairs department. Levine informed TPG's senior partners that he wanted to lead TPG's proposed expanded public affairs department.[4] When Levine learned in October 2014 that he might be passed over for this new role, he threatened in a series of discussions and emails to disclose and disseminate TPG's confidential information in a way that would "take down" TPG.[5]

Levine's repeated use of war references – including referring to himself as a "weapon of mass destruction" and warning TPG that it was risking a "live fire exercise" – raised concerns at

---

[1] *See* Declaration of Clive Bode in Support of Plaintiff's Motion for Preliminary Injunction ("Bode Decl.") ¶ 5 at Appendix p. 5.

[2] *See id.*

[3] *See id.* ¶ 13 at Appendix p. 7.

[4] *See id.*

[5] *See* Am. Compl. (Docket No. 5) ¶¶ 19–23; *see also* Bode Decl. ¶ 14 at Appendix p. 7.

TPG.[6]  Those concerns escalated after Levine began accusing various TPG officers of conspiring against him.[7]  In early November, TPG offered Levine a six month "cooling off" period during which he would have the opportunity to demonstrate he was qualified to lead the proposed expanded public affairs department.[8]  Levine rejected this proposal and demanded a severance package.[9]

During the ensuing weeks of discussions about his severance, Levine did not mention any specific acts of alleged wrongdoing at TPG, other than his criticism of officers whom he blamed for preventing him from taking leadership of TPG's public affairs group.[10]  In fact, when Levine sent an email on November 5, 2014, to Jim Coulter, one of TPG's founding partners, stating in general terms his dissatisfaction and concerns with TPG, Mr. Coulter and Mr. Bode agreed to meet Levine in person to discuss his concerns.  During their meeting on November 9, 2014, Levine did not raise or discuss any acts of alleged wrongdoing by the firm nor did he claim he was a whistleblower.

Further, on November 18, 2014, Levine sent an email to both of TPG's founding partners, Mr. Bonderman and Mr. Coulter, and Mr. Bode, detailing TPG's proposed public affairs transition plan. Nowhere in this multi-page email did Levine raise concerns about any improprieties or wrongdoing at TPG.  Instead, he stated in the email that he was in discussions with the principals of an outside consulting firm to join that firm.  From the time Levine was informed about the cooling-off period, he began to make plans to resign from TPG, including engaging in discussions with other potential employers, collecting information concerning his

---

[6] *See* Bode Decl. ¶ 15 at Appendix p. 7.

[7] *See id.*

[8] *See id.* ¶ 16 at Appendix p. 7.

[9] *See id.*

[10] *See id.* ¶ 17 at Appendix p. 7.

past compensation, and sending an email stating that his administrative assistant would leave TPG when he did.

**B.     In December 2014 Levine Began Removing Materials From TPG's Office and Downloading Files From TPG's Texas Server**

In December 2014, amid continuing negotiations about his severance package, Levine began entering TPG's San Francisco office after work hours and on holidays (including Christmas Eve and Christmas Day).[11]  During those visits, Levine downloaded confidential TPG documents from TPG's Texas computer server, according to TPG's investigation and further took unspecified hard copy documents.[12]

In late December 2014, TPG refused Levine's demand for a seven- to eight-figure separation payment.[13]  Levine responded with a rambling email on December 24, 2014, in which he claimed – for the first time – that he was a "whistleblower."[14]  In the email, Levine made a series of accusations about the firm, and in particular about a TPG officer that he blamed for his failure to make partner.[15]  Levine concluded: "I think it best if TPG came up with a new offer given the facts and circumstances as articulated above.  Please know that I wish to settle this matter without having to involve external entities – but that choice, gentlemen, rests firmly in your hands."[16]  A review of relevant materials confirms Levine's allegations about the firm are false.[17]

---

[11] *See* Bode Decl. ¶ 21 at Appendix p. 8.

[12] *See id.*

[13] *See id.* ¶ 22 at Appendix p. 8.

[14] *See id.*

[15] *See id.* at ¶¶ 22–23 at Appendix p. 8.

[16] *See id.*

[17] *See id.* ¶ 23 at Appendix p. 8.

One week later, on December 30, 2014, a reporter for the New York Times told a TPG employee that he had received a copy of an internal TPG e-mail from an unnamed source.[18]  He subsequently provided TPG with a copy of one such TPG e-mail from November 2013 that contained TPG's confidential information related to TPG's internal billing process.[19]  TPG determined the email, which had been altered, was accessible to only a very limited number of TPG personnel, including Levine.[20]  TPG also discovered that Levine had forwarded an unaltered copy of the leaked e-mail to his personal e-mail address on December 20, 2014, just 10 days before the New York Times contacted TPG.[21]

Additionally, as recent as January 30, 2015, TPG discovered an internal document, which was a schematic for a proposed home office, and an internal video presentation that had originally been produced by Levine, had been leaked to the Huffington Post.  TPG confirmed that no copies of the video at issue still exist at TPG.  While at the firm, TPG believes Levine had access to both this document and the video and is the most probable source of this recent leak of internal confidential information to the press.

## C.   Levine Signed Agreements That Require Him to Maintain the Confidentiality of TPG Information and That Require Him to Return TPG Equipment and Documents to TPG

As part of his employment at TPG, Levine entered into several agreements that were intended to protect the confidential financial and business information of TPG and its investors. The Confidentiality Agreement expressly stated that TPG agreed to give Levine access to:

> certain confidential, non-public and proprietary information concerning the business and operations of TPG; its affiliates, related persons and entities; the investment funds managed by

---

[18] *See* Bode Decl. ¶ 24 at Appendix p. 8.

[19] *See id.*

[20] *See id.* ¶ 25 at Appendix p. 8.

[21] *See id.*

> TPG; the investors in such investment funds; the portfolio companies of such investment funds; and certain information provided to TPG by third parties (collectively, "Confidential Information").[22]

As a condition to and in consideration for this promise, Levine agreed that he:

> will hold Confidential Information in strict confidence and will not disclose to any person or entity any Confidential Information in any manner whatsoever except as such disclosure may be required in connection with [Levine's] employment by TPG, or unless authorized in writing by TPG.[23]

The Confidentiality Agreement further stated that, upon written request, Levine "will promptly return to TPG all documents, notes and other tangible materials representing the Confidential Information and all electronic copies thereof."[24]

In his Confidentiality Agreement, Levine agreed that a breach of the Agreement "will cause TPG irreparable damage" and that TPG shall be entitled to obtain injunctive relief, among other remedies, in the event of such a breach.

> 6.   Remedies.   The Employee agrees that a breach of this Agreement will cause TPG irreparable damage for which recovery of damages would be inadequate, and that TPG shall therefore be entitled to obtain injunctive and other equitable relief under this Agreement as well as such further relief as may be granted by a court of competent jurisdiction.[25]

Levine also executed the TPG Employee Use Agreement – Mobile Data Device (the "Mobile Device Agreement"), which expressly referenced and incorporated the Confidentiality Agreement to require Levine to keep confidential and not disclose any Confidential Information

---

[22] *See* Confidentiality Agreement ¶ 1 attached as Exhibit A-1 at Appendix p. 11.

[23] *See id.* ¶¶ 1–2 at Appendix p. 11.

[24] *See id.* ¶ 3 at Appendix p. 11.

[25] *See id.* ¶ 6 at Appendix p. 11.

maintained on Levine's company-provided laptop and mobile device.[26]   Levine was also required to comply with his confidentiality obligations as set forth in TPG's Employee Handbook.[27]

Levine's position provided him access to detailed information, including but not limited to, information concerning TPG's current investments, and more importantly, information regarding potential investments and acquisition targets, highly sensitive financial information regarding TPG's private, non-public portfolio companies, detailed information regarding TPG's proprietary investment strategies, and lists and information regarding prospective clients and sources for potential financing.[28]   TPG took numerous steps to maintain the confidential nature of its proprietary information and trade secrets including but not limited to: having all TPG employees execute confidentiality and nondisclosure agreements, password protecting all access to TPG's email/file/backup servers and controlling access into TPG's offices through keycards.[29]

On December 31, 2014 – one day after learning that Levine improperly disclosed internal confidential information to the New York Times – TPG notified Levine in writing that his employment was terminated and demanded the immediate return of all Confidential Information in his possession, as well as his company-provided laptop and Blackberry mobile device.[30]   To date, Levine has ignored this, and a subsequent request to return the above-described property, and has failed to comply with his contractual obligations.[31]   Levine remains in possession of materials that he took from TPG's offices as well as his Firm-owned laptop computer and

---

[26] *See* TPG Employee Use Agreement – Mobile Data Device (the "Mobile Device Agreement") ¶¶ 1–4 attached as Exhibit A-2 at Appendix p. 14.

[27] *See* Bode Decl. ¶ 10 at Appendix p. 6.

[28] *See* Bode Decl. ¶ 11 at Appendix p. 6.

[29] *See id.* ¶ 12 at Appendix pp. 6–7.

[30] *See id.* ¶ 26 at Appendix p. 8.

[31] *See id.* ¶ 30 at Appendix p. 9.

Blackberry device.[32]   According to TPG records, Levine's laptop contains materials that he

improperly downloaded from TPG's Texas server as well as other confidential TPG materials.[33]

## III.
## ARGUMENT

**A.     Factors for Establishing a Right to Preliminary Injunction**

To establish a right to a preliminary injunction, a plaintiff must demonstrate: (i) a

substantial likelihood of success on the merits; (ii) a substantial threat that failure to grant the

injunction will result in irreparable injury if the injunction is not granted; (iii) that the threatened

injury outweighs any damage that the injunction may cause the adverse party; and (iv) that the

injunction will not have an adverse effect on the public interest. *Lakedreams v. Taylor*, 932 F.2d

1103, 1107 (5th Cir. 1991); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191 (5th Cir.

1984); *American Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 691 (N.D. Tex. 1996).[34]

The purpose of a preliminary injunction is to preserve the relative positions of the parties

until a trial on the merits can be held. *Jonibach Mgmt. Trust v. Wartburg Enters.*, 750 F.3d 486,

491 (5th Cir. 2014).   This is meant to preserve the last uncontested status quo – the status

existing just prior to a defendant's alleged breach. *See Bianco v. Globus Med., Inc.*, No. 2:12-cv-

147-JRG, 2012 U.S. Dist. LEXIS at *4–5 (E.D. Tex. Nov. 14, 2012).   The decision to grant or

deny a preliminary injunction lies within the discretion of the Court. *Lakedreams*, 932 F.2d at

1107.   Thus, an order granting a preliminary injunction will be reversed only upon a showing

that the Court abused its discretion. *Lakedreams*, 932 F.2d at 1107.

---

[32] *See* Bode Decl. ¶ 30 at Appendix p. 9.

[33] See *id.* ¶¶ 21, 30 at Appendix pp. 8–9.

[34] Both the Confidentiality Agreement and the Mobile Device Agreement expressly state that they are to be governed by and construed in accordance with the laws of the State of Texas. *See* Confidentiality Agreement ¶ 7 at Appendix p. 12; Mobile Device Agreement ¶ 9 at Appendix p. 15.

**B.      TPG is Entitled to Injunctive Relief**

Levine has unlawfully retained and blatantly misused TPG's internal confidential and proprietary information in direct violation of his confidentiality agreements in an attempt to extort millions of dollars from it.   In the absence of an injunction, Levine's continued misappropriation and threatened public disclosure of this information – which, indeed, has already begun to occur – undoubtedly threatens to cause TPG irreparable harm.   Levine has acknowledged that TPG would suffer irreparable harm and that injunctive relief would be appropriate in such circumstances.   Consequently, TPG is entitled to a preliminary injunction in this matter.

**1.      TPG Has a Substantial Likelihood of Success on the Merits**

TPG has a substantial likelihood of success on its claims because Levine has clearly breached and threatens to continue violating his Confidentiality Agreement and the Mobile Device Agreement, both of which required him to not only refrain from publicly disclosing TPG's internal confidential and proprietary information, but also to return all such information – as well as company-furnished devices – upon the termination of Levine's employment.   His inexplicable and continuing misuse of confidential and proprietary information in direct violation of these agreements demonstrates that TPG will succeed on the merits of its claims in this case.

Texas courts clearly recognize the right of an employer to insist on enforcement of the nondisclosure provisions of an employment contract. *Picker Int'l, Inc. v. Blanton*, 756 F. Supp. 971, 981 (N.D. Tex. 1990) (citing *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 471-72 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)).   Trade secrets, such as customer lists, pricing information, client information, customer preferences, buyer contacts and market strategies, are also afforded special protection in Texas. *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 777 (Tex. App. – Waco 1996, no writ).

An injunction specifically enforcing a nondisclosure agreement is usually the only way improper disclosure can be prevented. *Id.* An injunction is thus a proper remedy where an employee has breached, or is in such a position that he is likely to breach, a confidentiality agreement. *Id.* (citing *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 502 (5th Cir. 1982) (injunctive relief proper to enforce the nondisclosure provision of an employment contract)).

In the instant case, it is beyond dispute that TPG and Levine entered into binding and enforceable contracts—the Confidentiality Agreement and the Mobile Device Agreement—in conjunction with Levine's employment with TPG.[35] In these contracts, Levine expressly acknowledged that he was given access to confidential and proprietary information during his employment that was commercially sensitive, including data regarding TPG's potential investments and acquisition targets, highly sensitive financial information regarding TPG's private, non-public portfolio companies, detailed information regarding TPG's proprietary investment strategies, lists of current and prospective clients and sources for potential financing.[36] Given the fact that TPG is a privately-owned company which does not circulate public financial information, this information is incredibly valuable and certainly qualifies as trade secrets. *See, e.g., Bond*, 924 S.W.2d at 777.

For this very reason, the Confidentiality Agreement and the Mobile Device Agreement required Levine to maintain "in strict confidence" and prohibited any disclosure of such information "in any manner whatsoever" except as required in connection with Levine's

---

[35] *See* Confidentiality Agreement at Appendix pp. 10–12; Mobile Device Agreement at Appendix pp. 13–17.

[36] *See* Bode Decl. at ¶ 11 at Appendix p. 6; Confidentiality Agreement ¶¶ 1–2 at Appendix p. 11; Mobile Device Agreement ¶¶ 1–2 at Appendix p. 14.

employment or as "expressly authorized in writing by TPG."[37]   Both agreements further required Levine to promptly return any and all confidential information in his possession upon TPG's request.[38]

In direct violation of these unequivocal obligations, and in an effort to extort millions of dollars from TPG, Levine has expressly threatened to publicly disclose TPG's confidential and proprietary information to the media in a specific effort to cause TPG substantial harm.[39] Towards that end, Levine improperly accessed confidential TPG documents and communications that were unrelated to his employment, including visits to TPG's San Francisco office at odd, non-work hours – including Christmas Eve and Christmas Day of 2014.[40]   At that time, Levine downloaded data from TPG's Texas server which he refuses to return to TPG.

Unsatisfied with mere threats of improper disclosure following the failure of his extortion efforts, Levine has begun to actively disclose confidential information.   On or about December 30, 2014, TPG was contacted by a reporter from the New York Times who had received internal TPG e-mails containing confidential information.[41]   A forensic examination of a copy of the e-mail the reporter provided to TPG revealed not only that Levine had been one of a very limited number of people with access to that document, but that the e-mail itself had been doctored to contain fraudulent information.[42]   In fact, records show that on December 20, 2014, over a year

---

[37] *See* Confidentiality Agreement ¶¶ 1–2 at Appendix p. 11; Mobile Device Agreement ¶¶ 1–2 at Appendix p. 14.  The Mobile Device Agreement expressly incorporated by reference the terms and obligations imposed by the Confidentiality Agreement.  *See* Mobile Device Agreement ¶ 2 at Appendix p. 14.

[38] *See* Confidentiality Agreement ¶¶ 2–3 at Appendix p. 11; Mobile Device Agreement ¶¶ 4–5 at Appendix pp. 14–15.

[39] *See* Bode Decl. at ¶¶ 14–15, 23 at Appendix pp. 7–8.

[40] *See id.* at ¶ 21 at Appendix pp. 8.

[41] *See id.* at ¶ 24 at Appendix pp. 8.

[42] *See id.* at ¶¶ 24–25 at Appendix p. 8.

after the e-mail was created, Levine forwarded to his own e-mail address a copy of the unaltered version of the November 2013 e-mail.[43]

On December 31, 2014, TPG notified Levine in writing that his employment was terminated and requested immediate return of all TPG property, including any confidential information and his company-issued laptop and mobile devices.[44]  Levine ignored this and a subsequent request, and to this day has not returned these devices or the confidential information he has accessed.[45]

The record evidence thus clearly demonstrates a substantial likelihood of TPG's success on the merits in this case.  Indeed, as *Picker* makes clear, proof that a former employee may have disclosed and used his employer's confidential information in violation of an express agreement establishes a substantial likelihood of success on a claim for breach of non-disclosure and non-use provisions and therefore warrants issuance of a preliminary injunction specifically enforcing the nondisclosure provisions in the Confidentiality Agreement and the Mobile Device Agreement.  *See Picker*, 756 F. Supp. at 981 (N.D. Tex. 1990) (citing *Williams*, 704 S.W.2d at 471–72).[46]

## 2.    TPG is Threatened With Immediate and Irreparable Harm

Unless the Court grants an injunction, Levine's improper and intentional public disclosure of TPG's internal confidential and proprietary information will cause TPG immediate

---

[43] *See* Bode Decl. at ¶ 25 at Appendix p. 8.

[44] *See id.* at ¶ 26 at Appendix p. 8.

[45] *See id.* at ¶ 30 at Appendix p. 9.

[46] As the same underlying facts support each of TPG's claims in this matter, TPG can thus establish a substantial likelihood of success on the merits of its claims for conversion, breach of fiduciary duty, misappropriation of trade secrets and confidential information and violation of the Texas Theft Liability Act. *See, e.g., Cambridge Strategies, LLC v. Cook*, No. 3:10-CV-2167-L, 2010 U.S. Dist. LEXIS 133702 at *16–17 (N.D. Tex. Dec. 17, 2010).  In any event, because TPG can establish a substantial likelihood of success on the merits of its claims under the nondisclosure provisions, the Court need not reach TPG's likelihood of success on its other claims when determining the propriety of a preliminary injunction in this case. *See id.*

and irreparable harm.  Levine even acknowledged such in his signed Confidentiality Agreement, which states that "...a breach of this Agreement will cause TPG irreparable damage for which recovery of damages would be inadequate, and that TPG shall therefore be entitled to obtain injunctive and other equitable relief under this Agreement..."[47]  Levine has also admitted to TPG that this is precisely what he seeks to accomplish through his disclosures, referring to himself as a "weapon of mass destruction" in his efforts to "take down" the company.[48]

The Fifth Circuit has forcefully held that these sorts of breaches of confidentiality and misappropriation of trade secrets are not compensable through money damages:

> [t]he injury here is such that damages could not adequately compensate.  Were defendants permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award.  ***How such a figure could be arrived at escapes us***.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098 (5th Cir. 1981) (emphasis added); *see also FMC Corp.*, 677 F.2d at 504) ("It is not the number of trade secrets taken that determines whether the threat of irreparable harm exists.  The fact that even a single trade secret may be disclosed is enough.").  When economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate.  *Lakedreams*, 932 F.2d at 1109.

Courts in Texas similarly recognize that the threatened disclosure of trade secrets constitutes irreparable harm and requires injunctive relief to prevent such disclosure.  Confidential client lists, client needs and contacts, marketing strategies, and technical data are trade secrets worthy of protection.   *Molex, Inc. v. Nolen*, 759 F.2d 474, 479 (5th Cir. 1985) (former employees have a fiduciary duty to protect secret information, and any information

---

[47] *See* Confidentiality Agreement ¶ 6 at Appendix p. 11.

[48] *See* Bode Decl. at ¶¶ 14–15 at Appendix p. 7.

defendants learned about plaintiff's customers were trade secrets or confidential information); *Union Carbide*, 731 F.2d at 1191-92 (trade secrets have competitive value, and disclosure of a single secret may cause irreparable harm); *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 502-03 (5th Cir. 1982) (trade secrets do not have to be "patentable" – their protection only depends upon breach of faith or reprehensible conduct in learning about a competitor).

Levine promised in the Confidentiality Agreement and Mobile Device Agreement that he would hold TPG's confidential information in "strict confidence," and further promised not to disclose such information to any person or entity without TPG's express written consent and to return all such information to TPG upon its request.[49]   Despite these promises, Levine has ignored TPG's written requests for the return of all such information, and he has already made at least one public disclosure in bad faith and in specific violation of those agreements.[50]

There is thus an immediate and substantial risk that Levine will continue to improperly disclose or cause to be disclosed TPG's confidential and proprietary information – the very information that forms the heart of TPG's business – unless an injunction is issued.  Any further public disclosure will cause TPG's loss of confidential and proprietary information that can never been undone and is therefore irreparable harm.  In the face of Levine's apparent theft of TPG's confidential and proprietary information and his breach of his confidentiality obligations, TPG seeks specific performance of those nondisclosure obligations because any violation simply cannot be adequately compensated through monetary damages.

---

[49] *See* Confidentiality Agreement ¶¶ 1–2 at Appendix p. 11; Mobile Device Agreement ¶¶ 1–2 at Appendix p. 14.

[50] *See* Bode Decl. at ¶ 30 at Appendix p. 9.

### 3. The Threat of Injury to TPG is Outweighed by Any Supposed Damage to Levine

There can be no question in this case that the threatened injury to TPG – the loss of its confidential information and trade secrets – vastly outweighs any alleged harm to Levine. The granting of injunctive relief supports TPG's right to protect the confidentiality of its trade secrets and proprietary information and simply requires Levine to return and to not use or disclose TPG's confidential information as he expressly agreed to do. Levine should not be allowed to profit or otherwise obtain any benefit from his own intentional violation of his contractual obligations and his bad faith disclosure of sensitive TPG information. TPG only seeks to require Levine to honor his contractual obligations and to enjoin Levine's bad faith attempts to disclose confidential information.

TPG's internal confidential information certainly qualifies for trade secret protection under Texas law, as it encompasses potential investments and acquisition targets, highly sensitive financial information regarding TPG's private, non-public portfolio companies, detailed information regarding TPG's proprietary investment strategies, lists of current and prospective clients and sources for potential financing.[51] *See Bond*, 924 S.W.2d at 777 (finding that items such as customer lists, pricing information, client information, customer preferences, buyer contacts and market strategies have been shown to be trade secrets). Courts have routinely granted injunctive relief under identical circumstances to protect an employer's trade secret information. *See Zoecon Indus. v. American Stockman Tag Co.*, 713 F.2d 1174, 1176 (5th Cir. 1983).

---

[51] *See* Bode Decl. at ¶ 7 at Appendix p. 6; Confidentiality Agreement ¶¶ 1–2 at Appendix p. 11; Mobile Device Agreement ¶¶ 1–2 at Appendix p. 14.

TPG's right to protect its confidential and trade secret information vastly outweighs any damage the injunction allegedly might cause Levine.   Levine freely consented to the Confidentiality Agreement and the Mobile Device Agreement and guaranteed that he would hold TPG's confidential information in "strict confidence."[52]   The injunction will not prevent Levine from making a living; TPG only seeks to require Levine to comply with his contractual obligation to return any and all confidential information and to refrain from publicly disclosing that information.

This Court can and should enjoin Levine from using or disclosing TPG's confidential information and trade secrets in violation of his agreements.   *Union Carbide*, 731 F.2d at 1191-92 (trial court properly enjoined defendant who agreed not to disclose secret or confidential information during or after his employment).

### 4.   Preserving the Sanctity of Contracts and the Protection of Trade Secrets Serves the Public's Interest

Enjoining Levine from violating his contractual obligations and improperly disclosing TPG's internal confidential information and trade secrets will not have an adverse effect on the public interest.   Courts have recognized that the public interest is preserved by protecting trade secrets.   *See, e.g., Picker*, 756 F. Supp. at 983 ("During employment and after termination, an employee is obligated not to divulge his employer's trade secrets, whether or not the use or disclosure of such trade secrets are prohibited or restricted by an express contract.").

Moreover, courts have held that the public interest is clearly served by requiring persons like Levine to adhere to valid contractual agreements, rather than disregarding such agreements whenever they become inconvenient.   *See Learn2.com, Inc. v. Bell*, No. 3:00-CV-812-R, U.S.

---

[52] *See* Confidentiality Agreement ¶¶ 1–2 at Appendix p. 11; Mobile Device Agreement ¶¶ 1–2 at Appendix p. 14.

Dist. LEXIS 14283 at *51 (N.D. Tex. July 20, 2000). In fact, the public interest would be disserved by permitting persons like Levine to breach valid agreements. *See id.* For all of these reasons, TPG is entitled to a preliminary injunction and this motion should be granted.

> **5.     Levine's Belated and False Whistleblower Claim Does Not Change TPG's Right to Injunctive Relief**

Levine's claimed status as a whistleblower is a sham designed to divert attention from his theft of internal TPG information and his extortionist threats. As described above and in the Declaration of Clive Bode, Levine did not claim that he was a whistleblower until *after* TPG rebuffed his extortionist demands for millions of dollars. There is no merit to Levine's whistleblower claim and it does not change TPG's entitlement to relief; Levine is obligated to return and to not disclose or use TPG's confidential and proprietary information.

## IV.
## CONCLUSION

Based on the foregoing, TPG respectfully requests that the Court (i) grant this motion; (ii) issue a preliminary injunction requiring Levine to immediately return all TPG property in his possession, custody or control, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, including confidential and proprietary information, and his Firm-owned electronic devices, as well as all TPG confidential and proprietary information existing on his personal devices and/or storage media; (iii) issue a preliminary injunction enjoining Levine from possessing, disclosing, using, or exploiting TPG's confidential and proprietary information; (iv) issue a preliminary injunction requiring Levine to preserve, and not to delete, destroy, conceal or otherwise alter, any paper or electronic files or other data of TPG before it is returned to TPG pursuant to the preliminary injunction; (v) issue a preliminary injunction requiring Levine to immediately identify anyone who is not currently employed by TPG to whom he has disclosed TPG's confidential and proprietary information; and (vi) all such other and further

relief as is just and proper, both general and special, at law or in equity, to which TPG may show itself justly to be entitled or as this Court may deem appropriate.

Dated: February 3, 2015

Respectfully submitted,

Constantine Z. Pamphilis
State Bar No. 00794419
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
700 Louisiana Street
Suite 2200
Houston, TX 77002
Telephone: (713) 220-8800
Facsimile: (713) 222-0843
dpamphilis@kasowitz.com
ATTORNEY-IN-CHARGE
FOR PLAINTIFF TPG GLOBAL, LLC

Marc E. Kasowitz
Admitted *Pro Hac Vice*
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
mkasowitz@kasowitz.com

Marshall M. Searcy, Jr.
State Bar No. 17955500
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3512
Fax: (817) 878-9280
marshall.searcy@kellyhart.com

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that while Plaintiff TPG Global, LLC has made multiple attempts to effect service of its complaint on Defendant Adam Levine, such attempts have been unsuccessful to date.   Because Levine has not yet been served, Plaintiff has not had an opportunity to conference with him regarding the merits this motion at this time.

Marshall M. Searcy, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on 3rd day of February, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

Marshall M. Searcy, Jr.