ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TPG GLOBAL, LLC, a limited liability
company, TPG VSC-A, L.P, a limited
partnership, TPG VSC-D, L.P., a limited
partnership, TSL Equity Partners, L.P., a
limited partnership, TOP Professionals II,
L.P., a limited partnership, TPG
Management VI-A, L.P., a limited
partnership, TPG 2010 EPF, L.P., a limited
partnership, TPG EPF, L.P., a limited
partnership, TPG Global VSP, L.P., a
limited partnership, TPG Regional
Program, L.P., a limited partnership, and
Tarrant Advisors, Inc.

Plaintiffs,

v.

ADAM LEVINE, an individual.

Defendant.

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 7 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

Civil Action No.4:15-CV-00059-A

## PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, TPG Global, LLC, as assignee of TPG Capital Management L.P. f/k/a

TPG Capital, L.P. ("TPG Global"), TPG VSC-A. L.P., TPG VSC-D, L.P., TSL Equity

Partners, L.P., TOP Professionals II, L.P., TPG Management VI-A, L.P., TPG 2010 EPF,

L.P., TPG EPF, L.P., TPG Global VSP, L.P., TPG Regional Program, L.P., and Tarrant

Advisors, Inc. ("Tarrant Advisors") (collectively, "TPG" or the "Firm"), Plaintiffs in the

above styled cause, and make and file this Second Amended Complaint and would respectfully show the Court as follows:

## INTRODUCTION

1.    This action arises out of the blatant misuse and unlawful retention of confidential and proprietary information belonging to TPG by Adam Levine, a former TPG employee, who, in connection with efforts to extort millions of dollars from TPG, has made repeated threats to disclose and disseminate that information in a manner intended to inflict substantial, immediate, and irreparable harm on TPG and certain of its employees.

2.    Levine was hired as a member of TPG's public affairs group in January 2008.[1]  In that role Levine had access to the Firm's most sensitive confidential and proprietary information and was required to enter into confidentiality agreements prohibiting the disclosure of such sensitive internal information.

3.    Levine has breached those agreements and has threatened to engage in further breaches that will irreparably harm the Firm.  After Levine was informed that he would not be elevated to a partnership position at the Firm, and that TPG was considering various alternatives for the position of head of TPG's public affairs group, he made a series of ominous threats against the Firm and its employees and began secretly accessing from the Firm proprietary and confidential information, some of which, on information

---

[1]    Levine was initially hired by TPG Capital, L.P., which subsequently was renamed TPG Capital Management, L.P. on December 22, 2011.  Pursuant to a Global Transfer Agreement between TPG Capital Management, L.P. and TPG Global, LLC, among others, dated January 1, 2012, certain TPG Capital Management, L.P. employees, including Levine, were transferred to TPG Global, LLC in connection with a corporate restructuring.  Under the Global Transfer Agreement, all agreements between TPG Capital Management, L.P and Levine, including, but not limited to, the Confidentiality Agreement, were transferred to TPG Global, LLC.

and belief, he has already disclosed to third parties, consistent with his threats to do the same. On information and belief, in at least one instance, a document was disclosed to third parties which was fraudulent, in that it had been altered.

4.    Absent the intervention of this Court, such damaging disclosures are certain to continue. Despite multiple written requests, Levine refused to return the unlawfully retained material immediately, even though he was obligated by contract and applicable law to do so, in an effort to extort millions of dollars from TPG. Moreover, on information and belief, Levine has disseminated such internal confidential information to third parties, including the media.

5.    Accordingly, TPG is entitled to a temporary restraining order, preliminary injunction and/or permanent injunction: (1) requiring Levine to return all TPG property, whether original, duplicated, computerized, handwritten, or any other form whatsoever, including confidential and proprietary information; (2) enjoining Levine from using, disclosing, or exploiting TPG's confidential and proprietary information; (3) ordering Levine to preserve, and not to delete, destroy, conceal or otherwise alter, any paper or electronic files or other data of TPG; and (4) ordering Levine to identify anyone who is not currently employed by TPG to whom he has disclosed TPG's confidential and proprietary information. In addition, TPG is entitled to recover the damages it has suffered, and will continue to suffer, as a result of Levine's misconduct.

## PARTIES

6.    Plaintiff TPG Global, LLC is a leading global private investment firm, which is incorporated in Delaware and headquartered in Fort Worth, Texas, at 301

Commerce Street, Suite 3300, Fort Worth, Texas 76102.

7.     Plaintiff TPG VSC-A, L.P. is a Cayman Islands limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

8.     Plaintiff TPG VSC-D, L.P. is a Cayman Islands limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

9.     Plaintiff TSL Equity Partners, L.P. is a Delaware limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

10.     Plaintiff TOP Professionals II, L.P. is a Delaware limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

11.     Plaintiff TPG Management VI-A, L.P. is a Cayman Islands limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

12.     Plaintiff TPG 2010 EPF, L.P. is a Cayman Islands limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

13.     Plaintiff TPG EPF, L.P. is a Cayman Islands limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

14.     Plaintiff TPG Global VSP, L.P. is a Delaware limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

15.     Plaintiff TPG Regional Program, L.P. is a Delaware limited partnership whose principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

16.     Plaintiff Tarrant Advisors, Inc. is a Texas corporation, is headquartered in Fort Worth, Texas, at 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102, and is the general partner of TPG VSC-A, L.P., TPG VSC-D, L.P., TSL Equity Partners, L.P., TOP Professionals II, L.P., TPG Management VI-A, L.P., TPG 2010 EPF, L.P., TPG EPF, L.P., TPG Global VSP, L.P., and TPG Regional Program, L.P.

17.     Defendant Adam Levine resides at Millennium Tower, 301 Mission Street, Apt. 3F, San Francisco, California 94105, and has already made an appearance in this lawsuit.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because TPG has asserted claims against Levine under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* This Court also has supplemental jurisdiction over TPG's state law claims pursuant to 28 U.S.C. § 1367(a).

19.     Venue is proper in the Northern District of Texas (Fort Worth Division) because a substantial part of the property that is the subject of this action was situated on computer servers located in Fort Worth, Texas. Additionally, TPG is headquartered in

Fort Worth, Texas and suffered the damages it complains of in Fort Worth, Texas. A Texas jury has an interest in remedying this injury to a Texas resident.

20.    This Court has jurisdiction over Levine because he purposefully availed himself of the benefits and protections of the laws of the State of Texas by, among other things, contracting with Texas residents, committing a tort in whole or in part in Texas, agreeing that disputes under certain of the contracts at issue in this case should be governed by and construed in accordance with the laws of the State of Texas, agreeing that Fort Worth, Texas would be the exclusive venue for any disputes arising in connection with certain of the contracts at issue in this case, and sending employment-related documents to his employer's Texas office.

21.    More specifically, Levine has purposely availed himself of the benefits and protections of the laws of the State of Texas due to his substantial contacts with the State of Texas, many of which directly resulted from the facts underlying this lawsuit, including, but not limited to:

- In early 2007, while employed by a company called Public Strategies, Levine worked in Austin, Texas for a number of months, representing TPG in its acquisition of TXU, now known as Energy Future Holdings Corp. During this time, a TPG employee, Michael MacDougall, began to have discussions with Levine about Levine taking a job directly with TPG, which ultimately led to Levine's employment.

- In both the Confidentiality Agreement and the Mobile Device Agreement, which form the primary basis of this lawsuit, Levine expressly agreed that any disputes would be governed by and construed in accordance with the laws of the State of Texas, demonstrating that Levine has purposely availed himself of the benefits and protections of the laws of the State of Texas. Indeed, both of those agreements were made with TPG Capital, L.P., a limited partnership organized under the laws of the State of Texas and which maintains its principal office in

Fort Worth, Texas. Levine's signed offer letter with TPG Capital, L.P.—TPG's predecessor in interest—specifically identifies TPG Capital, L.P.'s principal office as being located in Fort Worth, Texas, indicating that Levine knew he was entering into a contract with a company located in Texas.

- During his time at TPG, Levine made numerous trips to the State of Texas as part of his normal work responsibilities for TPG, providing media-related advice to the Firm and various TPG portfolio companies. Levine made multi-day trips to Texas as part of his TPG employment on at least 20 different occasions between June 2008 and October 2014. Levine also routinely submitted expense reports to TPG in Fort Worth, Texas for approval.

- In connection with his employment with TPG, Levine became a limited partner of TPG VSC-A, L.P., TPG VSC-D, L.P., TSL Equity Partners, L.P., TOP Professionals II, L.P., TPG Management VI-A, L.P., TPG 2010 EPF, L.P., TPG EPF, L.P., TPG Global VSP, L.P., and TPG Regional Program, L.P., which are TPG-related co-investment and vintage share vehicles that maintain their principal offices in Fort Worth, Texas. Additionally, their general partner, Tarrant Advisors, is a corporation organized under the laws of the State of Texas and also maintains its principal office in Fort Worth, Texas. When signing limited partnership agreements in connection with these co-investment and vintage share vehicles, Levine expressly agreed that the exclusive venue for any disputes would be Fort Worth, Texas.

- As part of that transaction, Levine took out an investment loan with First Republic Bank, and contractually designated TPG GP Services, L.P. ("GP Services")—a limited partnership whose principal office is located in Fort Worth, Texas and which is a Texas citizen through its general partner, Tarrant Advisors—as the "agent for service of process for Adam Levine," and also as his "true and lawful agent and attorney-in-fact." Levine also agreed in the loan agreement itself that all notices to him would be sent to GP Services at its offices in Fort Worth, Texas.

- Also in conjunction with his employment with TPG, Levine signed affirmations of compliance with TPG's Securities Trading Policy and Information Flow Policy, which by their express terms required Levine to email or fax the affirmations to "the TPG Compliance Department in Fort Worth, Texas."

## FACTUAL BACKGROUND

### Levine Joins TPG

22.     In or about January 2008, TPG hired Levine as a member of the Firm's public affairs team.   Levine was responsible for, among other things, helping to coordinate TPG's responses to public relations inquiries and issues.  In that role, Levine occupied a position of trust and confidence that afforded him access to sensitive non-public, confidential, and proprietary information about TPG and its business and operations, including its strategic planning.

### Levine's Confidentiality Obligations to TPG

23.     As part of his employment at TPG, Levine entered into several agreements that were intended to protect the confidential financial and business information of TPG and its investors.

24.     On January 2, 2008, Levine entered into a Confidentiality Agreement (the "Confidentiality Agreement") pursuant to which he agreed not to disclose certain "Confidential Information," defined as:

> [N]onpublic and proprietary information concerning the business and operations of TPG; its affiliates, related persons and entities; the investment funds managed by TPG; the investors in such investment funds; the portfolio companies of such investment funds; and certain information provided to TPG by third-parties.

25.     Levine explicitly and unambiguously agreed to "hold Confidential Information in strict confidence and [not] disclose to any person or entity any Confidential Information in any matter whatsoever" and upon the written request of TPG,

to "promptly return to TPG all documents, notes and other tangible materials representing the Confidential Information and all electronic and hard copies thereof."

26.     In addition, Levine agreed that any breach of the Confidentiality Agreement would result in irreparable harm to TPG and that TPG therefore would be entitled to obtain injunctive and other equitable relief in order to protect its confidential information.

27.     Levine also agreed to maintain the confidentiality of electronic devices that he was provided by TPG, and to return those devices to TPG upon request. Supplementing the provisions of the Confidentiality Agreement, Levine also executed an Employment Use Agreement, dated February 6, 2014 (the "Mobile Device Agreement"), which restricted Levine's use of those devices and required them to be returned to TPG upon request.   Additionally, the Mobile Device Agreement prohibited Levine from deleting or modifying any file stored on his Firm-owned devices.

28.     Levine also agreed to be bound by TPG's Acceptable Use Policy, which restricted Levine's use of Firm information resources and systems for TPG business purposes and barred him from using TPG systems to view information or download information that he was not authorized to access.

29.     Levine was further bound by various confidentiality obligations set forth in the policies and procedures contained in the Firm's Employee Handbook.

30.     In connection with his employment with TPG, Levine entered into limited partnership agreements with TPG VSC-A, L.P., TPG VSC-D, L.P., TSL Equity Partners, L.P., TOP Professionals II, L.P., TPG Management VI-A, L.P., TPG 2010 EPF, L.P., TPG EPF, L.P., TPG Global VSP, L.P., and TPG Regional Program, L.P., which are

TPG-related co-investment and vintage share vehicles (the "Co-Investment & Vintage Share Agreements"). The Co-Investment & Vintage Share Agreements also prohibited Levine from disclosing TPG's internal information and documents, and disparaging TPG.

## Levine Repeatedly Threatens TPG and Its Employees

31.     After more than five years of working at TPG, Levine was informed in 2014 that he would not be promoted to a partnership position at the Firm and that TPG was considering various alternatives for the position of head of TPG's public affairs group. Levine reacted to these developments by making an escalating series of threats against TPG and its personnel, including that he would disclose sensitive and proprietary information to the media and that he would seek to plant damaging stories that would cause substantial harm to TPG and its business.

32.     For example, in November 2014, in a conversation with a TPG partner, Levine threatened that he could and would destroy TPG within a matter of days by planting a few key stories with the national press. During their conversation, Levine also was highly critical of another TPG partner and threatened to do everything he could to "take down" that partner, as well as TPG. In fact, Levine commented that he would "take down" TPG the same way that he took down Scooter Libby. This was a reference to the fact that Levine, who had worked as a deputy press secretary in the George W. Bush administration, contended that he was the one responsible, through his grand jury testimony, for sending I. Lewis "Scooter" Libby to prison in connection with the federal investigation of the leak of the covert identity of Central Intelligence Agency officer Valerie Plame Wilson.

33.    In November 2014, Levine sent an inappropriate and threatening e-mail to the partner responding to his suggestion that Levine may want to think about looking for employment elsewhere, stating, in part:

> I am not a vengeful or a spiteful man. But if you and your partners continue to handle this matter as you have thus far, this could very quickly deteriorate into a live fire exercise in the importance of handling public affairs issues with care and caution.

34.    Also in November 2014, Levine reached out to another senior partner at TPG to discuss how upset he was with TPG. During this conversation Levine referred to himself as a "weapon of mass destruction" for TPG and said that he "could bring TPG down in ten days."

35.    Based on these threats and others, numerous TPG employees are concerned for their personal safety, which has necessitated TPG's hiring of additional security personnel and services.

**Levine's Theft of TPG's Confidential Information**

36.    Levine began to carry out these threats by surreptitiously removing confidential information from TPG's offices and, on information and belief, disclosing it to third parties as part of an effort to damage TPG and its business. During this time period, Levine was taking from TPG's offices and computer systems confidential TPG documents and communications. These materials had no connection to any of Levine's then-current work, and were taken for the sole purpose of Levine carrying out his threats to "take down" the Firm by improperly releasing sensitive internal information.

37.     In furtherance of that scheme, Levine visited TPG's San Francisco office at odd, non-work hours, including Christmas Eve and Christmas Day, for the sole purpose of secretly accessing TPG documents and materials, which contained confidential and commercially sensitive information.

38.     TPG's records indicate that during these times that Levine was in the office, he was also logging on to TPG's computer systems and improperly downloading to his laptop numerous electronic files containing TPG's confidential and proprietary information, many of which were stored on computer servers located in Texas.

39.     After TPG became aware of Levine's misconduct and unauthorized access of TPG's computer systems, it incurred significant expense responding to the offense and assessing the damage caused to TPG's computer systems by Levine.

**Levine's Disclosure of TPG's Confidential Information**

40.     Having misappropriated TPG's confidential materials, Levine, on information and belief, has begun to follow through on his threats to damage TPG and its personnel by disseminating certain information and documents, including doctored e-mails, to media outlets and other third parties.

41.     TPG learned of one such instance when, on December 30, 2014, TPG was contacted by a reporter for the New York Times.  The New York Times reporter told TPG that he had received internal TPG e-mails from an unnamed source, and subsequently provided TPG with one such TPG e-mail from November 2013 that contained TPG's confidential information.

42.     TPG conducted a forensic investigation into this e-mail and determined that it had been altered, with certain information having been added, other information having been deleted, and some information having been changed.   TPG also determined that only a limited number of TPG personnel had access to the original e-mail that had been doctored, including Levine.   In fact, records show that on December 20, 2014, Levine forwarded to his own e-mail address a copy of the unaltered version of the November 2013 e-mail.

43.     Based on the results of its investigation, TPG believes that Levine altered the November 2013 e-mail, and in violation of his confidentiality obligations to TPG, provided the document to the New York Times.

44.     Additionally, TPG has reason to believe that Levine has been in contact with other media outlets and has provided TPG's confidential information to these publications as well.

**Levine's Termination from TPG**

45.     On December 31, 2014, in response to Levine's continued threats and taking of TPG's confidential information, TPG sent a letter notifying Levine that his employment with TPG had been terminated, effective immediately, as a result of his flagrant breaches of the terms of his employment, including his confidentiality obligations, among other things.

46.     TPG also demanded that Levine cease and desist from threatening TPG and its employees, and from disseminating Firm information to third parties in violation of his agreements.   TPG also demanded that Levine promptly return all TPG materials,

including any of TPG's confidential or proprietary information in his custody and control as well as his TPG-owned laptop, phone, and any other electronic devices.

47.    As of the filing of the Amended Complaint, Levine had not returned any materials to TPG, and remained in possession of materials that he took from TPG's office as well as his Firm-owned laptop computer and Blackberry device.  Further, for two months, Levine intentionally evaded service of process in connection with this matter, while unlawfully retaining TPG's confidential and proprietary information and electronic devices.

48.    On April 6, 2015, TPG received a package containing Levine's Firm-owned laptop computer and Blackberry device, which subsequently were forensically analyzed.  The initial results of this forensic analysis show that the hard drive from the Firm-owned laptop computer had been tampered with and all of the data and information contained on the hard drive had been destroyed.  Additionally, the Blackberry device had been "reset," which destroyed all of the data and information contained on that device as well.

49.    Absent intervention from this Court, TPG believes that Levine will continue to disclose TPG's confidential and proprietary information to third parties in an effort to inflict substantial harm to TPG and its business, including harm to its reputation, investor confidence, and goodwill.

## CLAIM 1: BREACHES OF CONTRACT

50.    TPG repeats and realleges the allegations of paragraphs 1 through 49 as if set forth fully herein.

51.     On January 1, 2008, TPG and Levine entered into the Confidentiality Agreement.

52.     On January 1, 2013, TPG entered into the Co-Investment & Vintage Share Agreements with Levine.

53.     On February 6, 2014, TPG and Levine entered into the Mobile Device Agreement.

54.     The Confidentiality Agreement, Co-Investment & Vintage Share Agreements, and Mobile Device Agreement are valid, binding and enforceable contracts between TPG and Levine.

55.     TPG has performed, and continues to perform, all conditions, duties, obligations and promises required on its part to be performed in accordance with the terms and conditions of the Confidentiality Agreement, Co-Investment & Vintage Share Agreements, and Mobile Device Agreement.

56.     The Confidentiality Agreement binds Levine to hold all of TPG's confidential information in strict confidence and not to disclose that information to any person or entity in any matter whatsoever, and requires Levine to promptly return to TPG all documents, notes, and other tangible materials representing the confidential information and all electronic and hard copies thereof, upon the written request of TPG.

57.     Under the Co-Investment & Vintage Share Agreements, Levine agreed not to disclose any information with respect to, or relating to TPG or its funds, or any matter related to TPG or its funds, including, without limitation, any and all reports, data, or other documents in connection with any transaction by any of TPG's funds.  Further,

Levine was prohibited from engaging in any conduct or communications with the intent of or that had the effect of disparaging TPG.

58.   The Mobile Device Agreement requires Levine to deliver to TPG his mobile devices, including, but not limited to, his Firm-owned laptop computer and Blackberry device, immediately upon request from TPG.   Additionally, the Mobile Device Agreement prohibits Levine from deleting or modifying any file stored on his Firm-owned devices and requires him to comply with any applicable document retention and preservation obligations to TPG in respect of his Firm-owned devices.

59.   Levine breached his obligations under the Confidentiality Agreement and Co-Investment & Vintage Share Agreements by improperly taking confidential TPG documents and communications from TPG, by failing to return TPG's confidential and proprietary information upon request, and, on information and belief, by manipulating and disclosing confidential information to third parties, including the New York Times.

60.   Levine breached his obligations under the Mobile Device Agreement by failing to return his mobile devices to TPG immediately upon request, and by destroying all data and information stored on his Firm-owned laptop computer and Blackberry device prior to returning these devices to TPG approximately three months after TPG's initial request.

61.   As a direct and proximate result of Levine's breaches of the Confidentiality Agreement, Co-Investment & Vintage Share Agreements, and Mobile Device Agreement, TPG has suffered substantial harm, of an amount that will be determined at trial.

## CLAIM 2: INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE

62.     TPG repeats and realleges the allegations in paragraphs 1 through 61, as if fully set forth herein.

63.     As set forth in the First Cause of Action, *supra*, Levine has breached his obligations under the Confidentiality Agreement, the Co-Investment & Vintage Share Agreements, and the Mobile Device Agreement by retaining TPG's confidential information in his possession after being terminated by TPG and, on information and belief, by disclosing TPG's confidential information to third parties.  There is a strong likelihood that TPG will succeed on its claims for breach of contract.

64.     Levine's breaches of contract have caused, and continue to cause, TPG injury including, without limitation, irreparable harm for which there is no adequate remedy at law.   In Section 6 of the Confidentiality Agreement, the parties expressly agreed that breaches of that agreement would result in irreparable damage justifying the granting of injunctive relief.

65.     There is no adequate remedy at law to compensate TPG for the irreparable harm to its reputation, investor confidence, and goodwill it has suffered and will continue to suffer due to Levine's disclosure of confidential information.

66.     These harms to TPG would be resolved if the Court were to issue injunctive relief and order Levine to specifically perform his obligations under the Confidentiality Agreement and Mobile Devices Agreement to return all confidential information in his possession.

67.     The balance of equities strongly favors issuing injunctive relief in favor of TPG as Levine will suffer no hardship from being ordered to comply with his existing contractual obligations by returning TPG's property.

## CLAIM 3: CONVERSION

68.     TPG repeats and realleges the allegations in paragraphs 1 through 67, as if fully set forth herein.

69.     Levine currently possesses TPG documents and communications, which contain confidential and commercially sensitive information.

70.     On December 31, 2014, TPG sent a letter to Levine notifying him that his employment with TPG had been terminated, and requesting that Levine return all TPG property, including all documents and materials containing confidential information, to TPG by January 5, 2015.   TPG also requested that Levine return all of his electronic devices to TPG, including his Firm-owned laptop computer and Blackberry device by January 5, 2015 as well.

71.     Notwithstanding TPG's request, Levine still possesses TPG's confidential information.

72.     Levine's actions were intentional, malicious, oppressive, or fraudulent, and give rise to liability for exemplary damages according to proof at trial.

73.     As remedies for Levine's conversion, TPG seeks compensatory and exemplary damages, a constructive trust over the converted materials, and an injunction requiring Levine to return the converted materials to TPG.

## CLAIM 4: BREACH OF FIDUCIARY DUTY

74.     TPG repeats and realleges the allegations in paragraphs 1 through 73, as if fully set forth herein.

75.     Given the relationship between TPG and Levine, a confidential relationship existed between TPG and Levine under Texas law.  This relationship expressly imposed upon Levine a duty to maintain the confidence and secrecy of TPG's confidential and proprietary information and especially a duty not to disclose such information to third parties.

76.     As a result, Levine owed TPG fiduciary duties, including duties of loyalty, honesty, and utmost good faith and the duty not to engage in self-dealing.

77.     Levine has breached his fiduciary duties to TPG by copying or otherwise removing information about TPG from TPG's premises and computer servers and by using and intending to use such information to the detriment of TPG.

78.     Therefore, TPG is entitled to a temporary restraining order and a preliminary injunction enjoining Levine from any further breaches of fiduciary duties, and from any further use or disclosure of TPG's confidential and proprietary information.

## CLAIM 5: MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION AND VIOLATION OF THE TEXAS THEFT LIABILITY ACT

79.     TPG repeats and realleges the allegations in paragraphs 1 through 78, as if fully set forth herein.

80.     TPG's confidential and proprietary information, whether recorded on paper or as data in a computer, constitute trade secrets and confidential information under

Texas common law. Levine obtained TPG's trade secrets and confidential information by improper means, including theft and a breach or inducement of a breach of a confidential relationship, contractual duty, or other duty to maintain the secrecy or limit the use of the trade secrets and confidential information.

81.   Levine misappropriated TPG's trade secrets and confidential information because he acquired such trade secrets and confidential information knowing or having reason to know that the trade secrets and confidential information were acquired by improper means and because he improperly disclosed or used TPG's trade secrets and confidential information.

82.   Levine's misappropriation of TPG's trade secrets and confidential information was and is willful and malicious because he intentionally tried to benefit himself knowing that in so doing he was injuring TPG. Levine's conduct constitutes a violation of the Texas Theft Liability Act, Chapter 134 of the Texas Civil Practice and Remedies Code.

83.   If not immediately enjoined by way of a temporary restraining order and the entry of a temporary injunction, Levine will continue to use, disclose, and misappropriate TPG's trade secrets and confidential information. Despite the fact that he is aware of TPG's intent to seek judicial relief, Levine intends to continue using TPG's trade secrets and confidential information.

84.   Unless immediately enjoined by this Court by way of a temporary restraining order and the entry of a preliminary injunction, Levine's misappropriation of

TPG's trade secrets and confidential information will continue to injure TPG, and there is no adequate remedy at law for such irreparable injury.

## CLAIM 6: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

85.     TPG realleges each allegation in paragraphs 1 through 84 as if fully set forth herein.

86.     TPG's computers and computer systems are used in interstate and/or foreign commerce or communication in the course of TPG's business and therefore are "protected computers" under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2)(b).

87.     Levine intentionally accessed TPG's protected computer systems without authorization, and/or exceeding his authorized access, and thereby obtained confidential and proprietary information from TPG's protected computer systems.

88.     Levine knowingly and with intent to defraud, accessed TPG's protected computer systems without authorization, and/or exceeding his authorized access, and by means of such conduct, furthered the intended fraud, obtained unauthorized use of TPG's protected computer systems, and obtained TPG's confidential and proprietary information, the value of which exceeds $5,000.

89.     Levine intentionally accessed TPG's protected computer systems without authorization, and/or exceeding his authorized access and, as a result of such conduct, caused TPG damage and loss.

90.     Levine, by, among other things, electronically submitting unauthorized expense reports, knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage to TPG's protected computer systems.

91.     As a result of Levine's aforementioned unauthorized access of TPG's computer systems, TPG has suffered damages in an amount to be proven at trial, but well in excess of $5,000, which includes, but is not limited to, responding to the offense and assessing the damage caused to TPG's computers and computer systems by Levine.

92.     Additionally, Levine knowingly caused damage to TPG's computers and computer systems, by, among other things, intentionally destroying all data and information contained on his TPG-owned laptop computer and Blackberry device and electronically submitting unauthorized expense reports.

93.     TPG has suffered further injury and harm in the loss of its confidential and proprietary information and trade secrets which were misappropriated by Levine.

94.     Levine's misconduct constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C.A. et. seq., and TPG is entitled to damages under the Act.

## JURY DEMAND

TPG demands a trial by jury.

## PRAYER FOR RELIEF

TPG prays that Levine be cited to appear and answer herein and that TPG has and recover judgment from Levine as follows:

a. For a temporary restraining order, preliminary injunction and/or permanent injunction requiring Levine to return all TPG property, whether original, duplicated, computerized, handwritten, or any other form whatsoever, including confidential and proprietary information, as well as all TPG confidential and proprietary information existing on his personal devices and/or storage media;

b. For a temporary restraining order, preliminary injunction and/or permanent injunction permanently enjoining Levine from possessing, disclosing, using, or exploiting TPG's confidential and proprietary information;

c. For a temporary restraining order, preliminary injunction and/or permanent injunction requiring Levine to preserve, and not to delete, destroy, conceal or otherwise alter, any paper or electronic files or other data of TPG;

d. For a temporary restraining order, preliminary injunction and/or permanent injunction requiring Levine to identify anyone who is not currently employed by TPG to whom he has disclosed TPG's confidential and proprietary information;

e. Compensatory damages in an amount to be determined at trial, constituting its losses from Levine's misconduct;

f. Reasonable and necessary attorneys' fees;

g. Pre- and post-judgment interest at the maximum rate allowed by law;

h. All costs of suit; and

i. All such other and further relief, both general and special, at law or in equity, to which TPG may show itself justly to be entitled or as this Court may deem appropriate.

Dated: April 17, 2015

Respectfully submitted,

Constantine Z. Pamphilis
State Bar No. 00794419
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, TX 77002
Telephone:  (713) 220-8800
Facsimile:  (713) 222-0843
dpamphilis@kasowitz.com
ATTORNEY-IN-CHARGE
FOR PLAINTIFF TPG GLOBAL, LLC

Marc E. Kasowitz
Admitted *Pro Hac Vice*
KASOWITZ, BENSON, TORRES &
 FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
mkasowitz@kasowitz.com

Marshall M. Searcy, Jr.
State Bar No. 17955500
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3512
Fax: (817) 878-9280
marshall.searcy@kellyhart.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record by electronic service on this the 17th day of April, 2015.

Marshall M. Searcy, Jr.